THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE R. SORRELS, Defendant-Appellant.

Fourth District    No. 4—07—1071

Opinion filed April 20, 2009.

Michael J. Pelletier, Gary R. Peterson, and Nancy L. Vincent, all of State Appellate Defender's Office, of Springfield, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In November 2007, a jury convicted defendant, Willie R. Sorrels, of resisting a peace officer (720 ILCS 5/31—1(a) (West 2006)). The trial court later sentenced defendant to six months in the McLean County jail.

Defendant appeals, arguing that (1) the State (a) failed to prove him guilty beyond a reasonable doubt and (b) relied on the inadmissible hearsay evidence of a police officer yelling "Stop," and (2) his trial counsel was ineffective because he failed to (a) object to the inadmissible hearsay and (b) tender a limiting instruction that the jury could not consider the hearsay testimony as substantive evidence. We disagree and affirm.

## I. BACKGROUND

In March 2007, the State charged defendant with resisting a peace

officer under section 31—1(a) of the Criminal Code of 1961 (count I) (720 ILCS 5/31—1(a) (West 2006)). Specifically, the State alleged that in March 2007, defendant knowingly resisted Bloomington police officer Steven Moreland's order to "Stop" by fleeing, despite defendant's knowledge that Moreland was acting within his official capacity. In October 2007, the State charged defendant with a second count of resisting a peace officer. Other than the name of the Bloomington police officer, who was identified as Benjamin Brace, the allegations in count II were (1) identical to the allegations in count I and (2) based on the same incident. Prior to defendant's jury trial, the State dismissed count I.

The evidence at defendant's November 2007 jury trial, which consisted of testimony from Moreland and fellow Bloomington police officer Shaun Meredith, showed the following.

In the early morning hours of March 12, 2007, Moreland was patrolling downtown Bloomington in his squad car. Moreland approached an intersection and noticed three men standing in the doorway of a closed church. Moreland drove around the block, which he estimated took about 30 to 45 seconds and saw the same three men standing in the church's doorway. Moreland parked his squad car and began to walk toward the church. Moreland explained that his intent was to ensure that no criminal activity was taking place.

Moreland, who was in uniform, identified himself as a police officer and asked if he could talk to the three men. Two of the men walked toward Moreland but the third man, who was wearing a black and red hooded sweatshirt, walked away. When Moreland "yelled for him," the man wearing the hooded sweatshirt ran away. Moreland radioed other officers that "he had one person running" from him and provided them a description. As Moreland questioned the two men, he received a radio transmission from Brace in which Brace stated that he was pursuing an individual on foot. Moreland released the other two men after he determined that they were not engaged in any criminal activity and drove to Brace's location. Moreland stated that he continued to pursue the fleeing man because the two men he had questioned told him that the man who fled had approached them and asked if they wanted to buy drugs.

When Moreland arrived at Brace's location, Brace already had the person he was chasing in custody. Moreland noticed that the man in custody was wearing the same hooded sweatshirt he had previously seen. Moreland identified the man as defendant.

Meredith testified that he was on patrol in his squad car when he heard Moreland's radio transmission. As Meredith drove toward Moreland's location, he saw a man matching the description Moreland had

given enter a parking structure. Meredith, who was in uniform, (1) stopped his squad car, (2) turned on his emergency lights, (3) entered the parking garage on foot, (4) identified himself, and (5) ordered the suspect to stop. The suspect ignored Meredith's order and continued walking away. Immediately thereafter, Brace arrived and stopped his squad car approximately 20 to 25 feet behind the suspect. Brace identified himself as a police officer and ordered the suspect to stop. The suspect immediately began running away. Meredith stated that Brace ordered the suspect to stop "between four to five times" as they chased him. Brace eventually apprehended the suspect, whom Meredith recognized as defendant. When Meredith asked defendant why he ran, defendant responded that he was afraid that Brace and Meredith were going to shoot him. Meredith stated that throughout their encounter with defendant, neither he nor Brace drew their weapons or threatened to do so.

Following the presentation of evidence and argument, the jury convicted defendant of resisting a peace officer (720 ILCS 5/31—1(a) (West 2006)). The trial court later sentenced defendant to six months in the McLean County jail.

This appeal followed.

## II. ANALYSIS

### A. Defendant's Claim That the State Failed To Prove Him Guilty of Resisting a Peace Officer

#### 1. *The Appropriate Standard of Review*

■ Citing *People v. Smith*, 191 Ill. 2d 408, 411, 732 N.E.2d 513, 514 (2000), defendant contends that because the facts of this case are not in dispute, the appropriate standard of review is *de novo*. However, because our review of the record reveals that a question of fact exists, namely—whether defendant fled with knowledge of the officers' intent to effect an investigatory detention—we view *Smith* as inapposite.

In *People v. Wheeler*, 226 Ill. 2d 92, 114-15, 871 N.E.2d 728, 740 (2007), the Supreme Court of Illinois addressed the appropriate standard of review to a defendant's argument that the State's evidence was insufficient to sustain his conviction, as follows:

"When reviewing a challenge to the sufficiency of the evidence, [a reviewing] court considers whether, viewing the evidence in the light most favorable to the State, ' "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (Emphasis in original.)" ' *People v. Collins*, 106 Ill. 2d 237, 261[, 478 N.E.2d 267, 277] (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); [citation]. The United States Supreme Court has stated that 'the

critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.' [*Jackson*], 443 U.S. at 318, 61 L. Ed. 2d at 573, 99 S. Ct. at 2788-89. This standard of review applies, 'regardless of whether the evidence is direct or circumstantial [citation], and regardless of whether the defendant receives a bench or jury trial [citation].' *People v. Cooper*, 194 Ill. 2d 419, 431[, 743 N.E.2d 32, 40] (2000).

[A reviewing] court will not retry a defendant when considering [the] sufficiency[-]of[-]the[-]evidence challenge. [Citation.] The trier of fact is best equipped to judge the credibility of witnesses, and due consideration must be given to the fact that it was the trial court and jury that saw and heard the witnesses. [Citation.] Accordingly, a jury's findings concerning credibility are entitled to great weight."

" 'When weighing the evidence, the trier of fact is not required to disregard inferences that flow from the evidence, nor is it required to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt.' " *People v. Saxon*, 374 Ill. App. 3d 409, 416, 871 N.E.2d 244, 250-51 (2007), quoting *People v. McDonald*, 168 Ill. 2d 420, 447, 660 N.E.2d 832, 843 (1995). An inference is simply a reasonable deduction from the consideration of other facts that the fact finder may draw in its discretion, but is not mandated to draw as a matter of law. *Saxon*, 374 Ill. App. 3d at 416, 871 N.E.2d at 251. Thus, "[i]n determining a defendant's guilt, the trier of fact is entitled to draw reasonable inferences that flow from the evidence [presented]." *People v. Kirkpatrick*, 365 Ill. App. 3d 927, 929-30, 851 N.E.2d 276, 279 (2006). As we discuss in the next section of this opinion, an issue in this case is what inferences the jury could have reasonably drawn from the facts in this case as the jury determined those facts. Thus, the *Wheeler* standard of review applies to this case, not that of *Smith*.

## 2. Sufficiency of the Evidence

■ Defendant argues that the State failed to prove him guilty beyond a reasonable doubt of resisting a peace officer. We disagree.

Section 31—1(a) of the Code provides, in pertinent part, the following:

"(a) A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his official capacity commits a Class A misdemeanor." 720 ILCS 5/31—1(a) (West 2006).

In this case, the jury heard the witnesses and was free to assess (1) their credibility and (2) the value of their testimony. Based on that evidence, the jury could have reasonably found that defendant knowingly resisted Brace's authority as a police officer when he ran away after Brace ordered him to stop. In particular, the evidence, when viewed in the light most favorable to the State, showed the following: (1) Brace was (a) in his police uniform, (b) driving a squad car, and (c) acting in his official capacity; (2) defendant's comments that he ran from Brace because he was afraid that Brace was going to shoot him allowed the jury to infer that defendant knew Brace was a police officer; (3) defendant ran away from Brace only after he ordered defendant to stop, which allowed the jury to infer that defendant heard Brace's order; and (4) defendant continued to run away despite Brace's additional orders to stop.

Considering the deference that we must give to the jury's verdict, the evidence presented was not so unreasonable, improbable, or unsatisfactory that it created a reasonable doubt of defendant's guilt. *Wheeler*, 226 Ill. 2d at 115, 871 N.E.2d at 740. We thus conclude that the evidence was sufficient to find defendant guilty of resisting a peace officer.

### B. Defendant's Claim That the State Relied on the Inadmissible Hearsay Evidence of a Police Officer Yelling "Stop"

■ Defendant next argues that the State relied on inadmissible hearsay statements to prove that he knowingly resisted a peace officer. Specifically, he claims that Meredith's testimony about hearing Brace yell "Stop" at defendant was inadmissible hearsay. We disagree.

#### 1. *Forfeiture and the Plain-Error Doctrine*

Initially, we note that defendant has forfeited this argument. A defendant forfeits an argument for appeal when he fails to (1) timely object at trial (*People v. Echavarria*, 362 Ill. App. 3d 599, 606, 840 N.E.2d 815, 822 (2005)) or (2) raise the issue in a posttrial motion (*People v. McCarty*, 223 Ill. 2d 109, 141, 858 N.E.2d 15, 35 (2006)). Here, the record shows that defendant failed to (1) object at trial to the statements and testimony he now complains about and (2) raise the issue in his posttrial motion.

Despite having forfeited this argument, defendant contends that his procedural default may be excused by the plain-error doctrine. "This court may review an error under the plain-error doctrine if (1) the evidence is closely balanced or (2) the error is 'so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process.' " *People v. Hostetter*, 384 Ill. App. 3d 700, 707, 893 N.E.2d

313, 319 (2008), quoting *People v. Hall*, 194 Ill. 2d 305, 335, 743 N.E.2d 521, 539 (2000). However, before addressing whether the complained-of statements and testimony constitute plain error, we must first determine whether they constitute any error at all. *People v. Owens*, 372 Ill. App. 3d 616, 620, 874 N.E.2d 116, 118 (2007).

## 2. *The Purpose of the Trial Testimony*

Defendant contends that the only evidence the State presented that Brace ordered him to stop came from Meredith's hearsay testimony that he heard Brace order defendant to stop "four or five times."

" 'Hearsay evidence, an out-of-court statement offered to prove the truth of the matter asserted, is generally inadmissible unless an exception applies.' " *People v. Shaw*, 386 Ill. App. 3d 704, 709, 898 N.E.2d 755, 761 (2008), quoting *People v. Sullivan*, 366 Ill. App. 3d 770, 779, 853 N.E.2d 754, 763 (2006). "[A]n out-of-court statement offered to prove its effect on a listener's mind or to show why the listener subsequently acted as he did is not hearsay and is admissible." *People v. Gonzalez*, 379 Ill. App. 3d 941, 954, 884 N.E.2d 228, 239 (2008).

In support of defendant's argument, he asserts that the State offered Meredith's testimony about Brace's out-of-court statements for the purpose of proving that he disregarded Brace's order to stop. However, by making such an assertion, defendant concedes that the State offered Meredith's testimony to show why defendant acted in the manner that he did—specifically, that after Brace initially ordered him to stop, he ran and continued to run despite Brace's additional orders to stop. As *Gonzales* explained, such evidence is an exception to the hearsay rule. *Gonzales*, 379 Ill. App. 3d at 954, 884 N.E.2d at 239.

However, even if the State had not offered this statement to show why defendant acted in the manner that he did, its admission would still have been proper. The command "Stop" is not subject to the credibility problems that the hearsay rule was designed to prevent. See, for example, *In re Keith C.*, 378 Ill. App. 3d 252, 265, 880 N.E.2d 1157, 1170 (2007) (holding that "[t]he primary rationale for the exclusion of hearsay testimony is the inability of the opposition to test the testimony's reliability through cross-examination of the out-of-court declarant"). However, no "truth of the matter asserted" is present in a police officer's command to "Stop." Nor is it necessary for the opposition "to test the testimony's reliability through cross-examination of the out-of-court declarant" because that testimony has no "reliability" in the hearsay sense. Instead, all that typically matters—as in this case—is whether the command "Stop" was made. In this regard, testimony about the command is no different than testimony that a

person sneezed, a door slammed, someone laughed or cried, or someone rang a bell. We find support for this view in *Holland v. State*, 122 Md. App. 532, 543-44, 713 A.2d 364, 369-70 (1998), in which the Court of Special Appeals of Maryland stated the following:

"To qualify as hearsay, the words recounted in court must, for starters, constitute an assertion or statement of a fact. Many out-of-court utterances are self-evidently not assertions. If a witness testifies to the out-of-court inquiry, 'What time is it?,' that inquiry is obviously not an assertion of anything. *** An out-of-court assertion of a fact may be true or untrue. For that reason, its admissibility in evidence is problematic if offered to prove that fact. *** The out-of-court command, 'Stop!' can be, by its very nature, neither true nor untrue and there is, therefore, no such credibility problem."

We agree with the Maryland Court of Special Appeal's analysis and adopt its holding.

We also agree with the following discussion about similar expressions, which are not considered hearsay:

" 'Many out-of-court utterances fall within such categories as greetings, pleasantries, expressions of gratitude, courtesies, questions, offers, instructions, warnings, exclamations, expressions of joy, annoyance[s], or other emotion, etc. Such utterances are not intended expressions of fact or opinion. They are not assertions, at least for purposes of the hearsay rule. Thus they are not hearsay.

"Hello."

"How are you?"

"Have a nice day."

"Would you like to have lunch?"

"I hope it doesn't rain tomorrow."

"I wonder what he paid for that car."

"Thank you."

"Can you join me for a drink?"

"Don't do that, or else."

"Watch your step."

None of the above utterances is an intended expression of fact or opinion. None is hearsay.' " (Emphases omitted.) *Stoddard v. State*, 157 Md. App. 247, 259, 850 A.2d 406, 412 (2004), *rev'd on other grounds*, 389 Md. 681, 713, 887 A.2d 564, 583 (2005), quoting *Burgess v. State*, 89 Md. App. 522, 537-38, 598 A.2d 830, 838 (1991).

Accordingly, we conclude that defendant's argument is entirely without merit. Given that no error occurred, we need not consider defendant's argument under a plain-error analysis.

In so concluding, we also need not address defendant's final argument that his trial counsel was ineffective because that contention was premised on his meritless inadmissible-hearsay claim.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

APPLETON and POPE, JJ., concur.